UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
RENEE ABBANANTO, SUSAN CHODKOWSKI,
DANIELLE DAVIDSON, JAMES DELAHUNTY,
MATTHEW SARTER, and all others similarly
situated,

                Plaintiffs,                              **MEMORANDUM**
                                                                    **DECISION AND ORDER**
                                                                    19-CV-01102 (GRB) (JMW)

           -against-

COUNTY OF NASSAU,

                Defendant.
---------------------------------------------------------------X

**WICKS,** Magistrate Judge:

      This case is the latest iteration of a series of lawsuits brought by Plaintiffs -- male and female Police Communications Operators ("PCOs") and Police Communications Operators Supervisors ("PCOSs") -- alleging that their employer Defendant County of Nassau subjected them to a system of illegal employment practices.  Past cases, some of which remain pending, involve allegations of federal and state wage and hour violations,[1] while others involve allegations of Equal Pay Act violations.[2]  Presently, Plaintiffs allege that Defendant has violated, *inter alia*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL") in creating a system whereby the predominantly male Fire Communication Technicians ("FCTs") and Fire Communications Technicians Supervisors ("FCTSs") are treated more favorably than the predominantly female PCOs and PCOSs, despite having nearly identical job responsibilities. Specifically, even though both the police and fire operators and supervisor groups are comprised of males and females, because the majority of FCTs and FCTSs are male, Plaintiffs allege that Defendant's favorable treatment of FCTs and FCTSs constitutes sexual discrimination in violation of both Title VII and NYHRL.

---

[1] *See, e.g.*, *Chodkowski v. Cnty of Nassau*, 16-CV-5770 (JMW); *Davidson v. Cnty. of Nassau*, 18-cv-1182 (JMW).
[2] *See, e.g.*, *Ebbert v. Nassau Cnty.*, 05-CV-05445 (AKT); *Volpe v. Nassau Cnty.*, 12-cv-02416 (JFB) (AKT).

Before the Court at this time is Plaintiffs' motion to certify this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiffs ask that the class be comprised of all PCOs and PCOSs irrespective of their sex. Defendant opposes the motion. For the reasons set forth below, Plaintiffs' motion for class certification is GRANTED.

## I.  BACKGROUND

The named Plaintiffs are male and female PCOs and PCOSs for Defendant Nassau County. (DE 1 at 7–8.) Of the approximately two hundred PCOs and PCOSs currently employed by Defendant, over ninety percent are female. (*Id.* at 8.) PCOs and PCOSs work a seven week "tour cycle" in which they work three twelve-hour shifts, totaling thirty-six hours, per week for the first six weeks. (*Id.*) On the seventh week, PCOs and PCOSs are required to work four twelve-hour shifts, totaling forty-eight hours of work for the final week of the tour cycle. (*Id.*) These are known as "supplemental days." (*Id.*) Plaintiffs allege that Defendant fails to provide them straight time or overtime pay for any hours worked over forty hours, *i.e.* the eight additional hours over supplemental days. (*Id.*) Plaintiffs further allege that Defendant never compensates them for mileage when working noncontiguous overtime or working during the seventh supplemental week, and that Defendant subjects Plaintiffs to random drug testing. (*Id.* at 8.)

Plaintiffs allege that, in contrast, Defendant does not subject FCTs and FCTSs—all of whom allegedly perform virtually identical duties to Plaintiffs—to the above employment conditions. Specifically, Plaintiffs allege that FCTs and FCTSs are (1) not required to work a seventh week on their tour cycle; (2) compensated for mileage when working noncontiguous overtime; (3) not subjected to random drug testing; and (4) afforded seven to eight more opportunities a year for overtime than their PCOs and PCOSs counterparts. (*Id.* at 9–10.) Because the overwhelming majority of FCTs and FCTSs are male, Plaintiffs allege that Defendant's favorable treatment of FCTs and FCTSs constitutes sexual discrimination in violation of Title VII and NYHRL. (*Id.* at 11–12.)

Plaintiffs commenced this action on February 25, 2021. (DE 1.) Defendant moved to dismiss the complaint for failure to join the Civil Service Employees Association, Inc. (the "Union") as an

2

indispensable party pursuant to Federal Rule of Civil Procedure 12(b)(7) or, alternatively, to join the Union as an indispensable party pursuant to Federal Rule of Civil Procedure 19. (DE 29.) The Honorable Gary R. Brown then denied that motion in its entirety. (DE 30.) Defendant proceeded to file an answer on June 25, 2020 (DE 30), as well as a third-party complaint against the Union on July 9, 2020 (DE 31). The Union then moved to dismiss Defendant's third-party complaint, which Judge Brown also denied. (DE 43.) Following the Union's answer to the third-party complaint (DE 44), Plaintiffs filed the present motion for class certification, which Defendant opposes (DE 58). The undersigned held oral argument on January 26, 2022 and reserved decision. (DE 63.)

## II.   LEGAL STANDARD

The Supreme Court has made clear that class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979); *see, e.g.*, *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018). That said, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019) (internal quotation marks and citations omitted); *see Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009), *aff'd sub nom.*, *Gortat v. Capala Bros., Inc.*, 568 F. App'x 78 (2d Cir. 2014). In any event, courts must conduct a "rigorous analysis" to determine whether the requirements for class certification are met. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) (citation omitted).

Federal Rule of Civil Procedure 23 governs motions for class certification. Rule 23(a) sets forth the first set of prerequisites for class certification, stating that a class action may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

These prerequisites are "often referred to as the criteria of numerosity, commonality, typicality, and adequacy." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 206 (E.D.N.Y. 2015) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). The Second Circuit has also recognized an implicit requirement of "ascertainability" within Rule 23(a). *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."). Rule 23(a) "does not set forth a mere pleading standard," but instead requires that the proponent of certification "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

Apart from Rule 23(a)'s numerosity, commonality, typicality, adequacy and ascertainability requirements, plaintiffs seeking class certification must satisfy one of the three additional requirements set forth in Rule 23(b). Fed. R. Civ. P. 23(b). Rule 23(b) authorizes certification of a class so long as Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create risk of:

  (A) inconsistent of varying adjudications with respect to individual class members would establish incompatible standards of conduct for the party opposing class; or

  (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* Because Plaintiffs here seek certification under Rule 23(b)(3), the Court will consider the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

With these principles at hand, the Court addresses Plaintiffs' motion for class certification under Rule 23.

### III.   DISCUSSION

#### A.   Rule 23(a)

##### i.   Numerosity

The numerosity prong of Rule 23(a) requires that individuals in the proposed class be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when the proposed class is greater than or equal to forty members. *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 95 (E.D.N.Y. 2015). This presumption, however, "does not provide rigid parameters, and the ultimate issue is whether the class is too large to make joinder practicable." *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 255 (S.D.N.Y. 2010) (internal quotation marks and footnote omitted); *see Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.") (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)). Thus, in considering the practicability of joinder, courts focus on the factors articulated by the Second Circuit in *Robidoux*:

> (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members.

*Robidoux*, 987 F.2d at 936. These factors become particularly salient in circumstances where the size of the proposed class falls in the so-called "gray-area" of between twenty-one and forty members. *MacNamara v. City of N.Y.*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011) ("In deciding numerosity, particularly

in the 'gray area' between these parameters, courts must consider factors other than class size.") (citation omitted).

Here, Plaintiffs represent that "[t]here are approximately 200 [PCOs] and [PCOSs] employed by Defendant" and that "all of the Plaintiffs and all the other PCOs and PCOSs are treated" in a manner allegedly contrary to law. (DE 58-2 at 2.) The number of PCOs and PCOSs in the proposed class, approximately two hundred, clearly warrants the presumption of numerosity. Plaintiffs' only other argument in support of a finding of numerosity is that the proposed class in this matter is larger than the classes certified in both *Ebbert* and the phase of *Chodkowski* litigated in state court. (DE 58-11 at 9.)

In opposition, Defendant does not dispute that a presumption of numerosity exists and instead contends that an application of the *Robidoux* factors weighs heavily against a finding of numerosity. (DE 58-16 at 16–19.) Specifically, Defendant contends that the first factor weighs in its favor because "the proposed class of opposite sexes is not feasible at all, and effectively numbers zero," leading to a waste of judicial resources in the event of class certification. (*Id.* at 17.) Defendant next contends that the second factor—whether the proposed class is geographically dispersed—weighs in its favor because all members have worked in Nassau County the past three years and presumably live in the surrounding area. (*Id.* at 17–18.) As to the third factor, Defendant contends that Plaintiffs have not established that the proposed class members lack the financial resources to join Plaintiffs' suit because, based on their PCO and PCOS salaries and benefits, "they are far from indigent." (*Id.* at 18.) Defendant adds that New York law provides for the payment of fees should Plaintiffs prevail on their state law claims. (*Id.*) Defendant next asserts that the fourth factor also weighs against a finding of numerosity because Plaintiffs have failed to establish that the proposed class members are incapable of bringing individual lawsuits, particularly because they are not incarcerated, unsophisticated, or elderly. (*Id.* (quoting *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 115 (S.D.N.Y. 1998)).) Finally, Defendant contends that the fifth factor also weighs against a finding of numerosity because Plaintiffs do not seek prospective relief that will have an effect on future class members. (*Id.*)

Notwithstanding Defendant's overtures, the Court concludes that Plaintiffs have satisfied Rule 23's numerosity requirement. Because Plaintiffs propose a class of approximately two hundred class

6

members—which, as noted above, easily creates the presumption of numerosity—this case falls well beyond the "gray-area" of between twenty-one and forty proposed members, consequentially lessening the importance of the *Robidoux* factors. *MacNamara*, 275 F.R.D. at 137.  Weighing the factors in this light leads to a finding of numerosity.

Defendant is correct that Plaintiffs have failed to show that the proposed members, presumably all residents of Nassau and Suffolk counties, are so geographically dispersed to make joinder impracticable. *Cf. Westchester Indep. Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll.*, 331 F.R.D. 279, 290 (S.D.N.Y. 2019) ("I do not think that dispersion within a single county is what the Second Circuit contemplated when it instructed courts to consider 'geographic dispersion of class members.'") (quoting *Robidoux*, 987 F.2d at 936).  Plaintiffs have likewise failed to establish that the proposed members lack the financial wherewithal or ability to find their own counsel so as to render joinder impracticable.  (*Compare* DE 58-16 at 18 (Defendant explaining the proposed class members' "substantial benefits" and that top earners in 2020 made over $150,000) *with LeGrand v. N.Y.C. Transit Auth.*, No. 95–CV–0333, 1999 WL 342286, at *5 (E.D.N.Y. May 26, 1999) (holding that employees earning $47,318 per year evidenced their ability to hire counsel and join the pending action or file separate suit).)  Thus, these factors weigh against a finding of numerosity.

However, the first *Robidoux* factor, which considers the benefit of judicial economy in certifying the class, outweighs all other factors.  Indeed, holding one trial, as opposed to approximately two hundred, is a profoundly more efficient path forward.  *See Boyd v. Interstate Brands Corp.*, 256 F.R.D. 340, 358 (E.D.N.Y. 2009) ("To hold [one hundred and forty] individual race-discrimination trials would certainly be a great deal less efficient than consolidation into a single action.") (adopting report and recommendation). Defendant's argument that "there will be no judicial economy gained in maintaining this matter as a Rule 23 class action" because "it is impossible for the County to have engaged in sex discrimination against both sexes," (DE 58-16), is a commonality argument masquerading as a numerosity argument, and is therefore addressed *infra*.

As such, Plaintiffs have satisfied the numerosity requirement.

### ii. Commonality

Like many Title VII class actions, the "crux of this case is commonality." *Dukes*, 564 U.S. at 349. Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do" to satisfy the commonality requirement of Rule 23(a)(2). *Dukes*, 546 U.S. at 359 (alterations and internal quotation marks omitted). However, because any competently crafted class complaint "literally raises common 'questions,'" not every common question suffices. *Id.* at 349. Instead, Plaintiffs' claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Id.* at 350. In other words, Plaintiffs must pose a common question that "will produce a common answer to the crucial question why was I disfavored." *Id.* at 352. To answer the commonality question, courts look to the substantive law governing the case to determine whether a common question will yield a common answer. *See Kassman v. KPMG*, 416 F. Supp. 3d 252, 274 (S.D.N.Y. 2018) (considering the requirements of Title VII disparate impact and disparate treatment in the commonality analysis).

The quandary posed here is that both groups – fire and police – are comprised of both males and females. Defendants argue that this very inconsistency makes commonality in a sex discrimination case impossible. The question is, therefore, can commonality be met in a sex discrimination case when the two groups contain mixed genders?

In determining whether Plaintiffs have satisfied Rule 23's commonality requirement under these circumstances, the Court is guided by the Honorable Pamela K. Chen's thoughtful decision in *Hill v. City of New York*, 13-CV-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019), a case strikingly similar to this one. In *Hill*, plaintiffs—minority *and* non-minority 911 operators for the New York Police Department—alleged that defendants discriminated against them based on their race by treating other, predominantly non-minority dispatch groups more favorably. *Id.* at *6. Specifically, plaintiffs alleged that defendants "applied a set of practices and policies uniformly across the [proposed] class as part of an overarching pattern of discrimination, including blanket cancellation of sick leave, mandatory double-shifts and/or overtime shifts several times a week," practices and policies that were not applied to other dispatch

8

groups. *Id.* This, in turn, negatively impacted plaintiffs—ninety-five percent of whom were minorities—despite the absence of such conditions on the predominantly non-minority dispatch groups. *Id.*

In considering plaintiffs' motion to amend the prior class certification to include non-minority class members, the court concluded that the injection of non-minority class members did not disturb the commonality of the class. *Id.* at *1, *6. The court reasoned that, because plaintiffs' "allegations ha[d] always focused on discrimination at the group, as opposed to individual, level, the addition of the non-minority 911 Operators d[id] not destroy commonality," particularly because the challenged practices and policies aggrieved *all* plaintiffs, not just minority plaintiffs. *Id.* at *6. The court thus found that "common questions relating to the [d]efendants' challenged practices and policies appl[ied] equally to the claims of the minority and non-minority 911 [o]perators," satisfying the commonality requirement. *Id.*

*Hill*'s reasoning applies in equal force here. Apart from the uncanny similar factual background, plaintiffs' theory of discrimination in *Hill* is nearly identical to Plaintiffs' theory here, namely that Defendant has imposed an overarching system of sex discrimination against the predominantly female PCOs and PCOSs by requiring that they work supplemental days, failing to compensate them for mileage on noncontiguous overtime and supplemental day travel, and subjecting them to random drug testing, practices that Defendant does not impose on the predominantly male FCTs and FCTSs. The contention that a class of male *and* female PCOs and PCOSs is an impossibility in the Title VII context, as raised throughout Defendant's opposition, is merely a red herring that ignores Title VII's applicability to not only those discriminated against directly but also to those who are aggrieved by unlawful discriminatory practices directed at others. *See* 42 U.S.C. § 2000e-5 (stating that any "person aggrieved" by discriminatory practice may file a charge with the Equal Employment Opportunity Commission); *see also Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) ("We hold that the term 'aggrieved' in Title VII . . . enabl[es] suit by any plaintiff with an interest 'arguably sought to be protected by the statute' while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII.") (brackets and internal citations omitted). Under Plaintiffs' theory of

9

this case, Defendant's challenged system applies to—and therefore aggrieves—*all*, rather than just female, PCOs and PCOSs, creating common questions sufficient to satisfy commonality.

Defendant's opposition leans heavily on *Strykers Bay Neighborhood Council, Inc. v. City of New York*, 695 F. Supp. 1531 (S.D.N.Y. 1988). In *Strykers Bay*, plaintiffs, minority and non-minority residents of an urban renewal area, sought class certification to proceed with their racial discrimination claims. *Id.* at 1533–34, 1537. In assessing whether the plaintiffs satisfied Rule 23's adequacy requirement, the court noted that it was "impossible . . . for defendants to have engaged in racial discrimination against both minorities and non-minorities at the same time." *Id.* at 1537. Thus, "[b]ecause of this inherent inconsistency," the court concluded that it was impossible to identify a named plaintiff who could adequately represent the proposed class. *Id.*

Defendant's reliance on *Strykers Bay* is unsurprising in light of its favorable holding. However, despite being confronted with a similar factual scenario, the *Hill* court expressly declined to adopt *Strykers Bay*'s reasoning in its determination that both minorities and non-minorities could make up a race discrimination class. *Hill*, 2019 WL 1900503 at *8 n.11 ("[T]he Court respectfully disagrees with previous decisions in this Circuit finding that '[i]t is impossible . . . for [D]efendants to have engaged in racial discrimination against both minorities and non-minorities at the same time.'") (quoting *Strykers Bay*, 695 F. Supp. at 1537). As Plaintiffs urge the Court to do here, the *Hill* court relied on the Supreme Court's standing cases in *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972), *Gladstone, Realtors v. Bellwood*, 441 U.S. 91 (1979), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), all of which held that a non-minority could sue for racial discrimination under the Fair Housing Act. The *Hill* court then grafted the Supreme Court's reasoning in those cases onto the class certification context of employment discrimination claims.[3] The Court agrees with the reasoning espoused in *Hill*, and therefore respectfully

---

[3] "In the same way that everyone in a neighborhood, regardless of race, is aggrieved by housing discrimination practices, [and therefore] . . . has claims typical of the others, every employee in a workplace, aggrieved by the discriminatory policies and practices aimed at that workplace, has the same type of claim in an action challenging those policies. Ensuring that class action claims are sufficiently congruent is the underlying purpose of most of Rule 23(a)'s requirements." *Hill*, 2019 WL 1900503 at *8 n.11 (internal quotation marks, brackets, and citations omitted).

10

declines to adopt the holding of *Strykers Bay*. In sum, Plaintiffs have satisfied Rule 23's commonality requirement.

### iii. Typicality

Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, No. 20-1642-cv, 2022 WL 211089, at *8 (2d Cir. Jan. 25, 2022) (internal quotation marks and citation omitted). "Typicality ensures that class representatives have the proper incentive to prove all elements of the cause of action that would be presented by individual members of the class if they were pursuing their own individualized actions." *Hill*, 2019 WL 1900503 at *6 (citing *Floyd v. City of N.Y.*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012)). It is well understood that the typicality analysis "tend[s] to merge" with the commonality analysis because "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *In re PPDAI Grp. Sec. Litig.*, 18-CV-6716 (TAM), 2022 WL 198491, at *6 (E.D.N.Y. Jan. 21, 2022) (quoting *Dukes*, 564 U.S. at 349 n.5) (brackets omitted).

In light of the Court's above finding of commonality, typicality is easily found in this case. Plaintiffs' claims, asserted by both male and female PCOs and PCOSs, "are grounded in the same '*overarching* pattern of discrimination.'" *Hill*, 2019 WL 1900503 at *7 (emphasis in original). The named Plaintiffs' claims are typical of those of the proposed class in that all class members face the same system of employment policies allegedly put in place to discriminate against the predominately female PCOs and PCOSs. As noted above, these policies include that *all* PCOs and PCOSs—regardless of sex—work supplemental days, not be compensated for mileage on noncontiguous overtime and supplemental day travel, and be subjected to random drug testing. Said differently, "[male] class members have also,

11

allegedly, suffered these injuries for the same reason as their [female] counterparts, *i.e.*, because of Defendant['s] discriminatory intent towards their [female-dominated] unit." *Id.* Thus, Plaintiffs have satisfied the typicality requirement.

      iv.   **Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To fulfill the adequacy requirement, the proponent of class certification must ensure "that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013); *see also Amchem Prods., Inc.*, 521 U.S. at 625. The adequacy prong also requires courts to ensure "that 'class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Plaintiffs have satisfied the adequacy requirement. The Court can discern no fundamental conflict among the male and female PCOs and PCOSs. This is particularly true given, as discussed above, that all proposed class members, irrespective of their gender, are negatively affected by Defendant's policies and practices. Defendant's argument in regard to adequacy orbits around the same argument raised in regard to commonality, that is, "if the male Plaintiffs vigorously pursue their own claims, they will undercut the claims of the female class members," (DE 58-16 at 23), and is therefore, for the same reasons as above, unpersuasive in establishing that a fundamental conflict exists. Moreover, the Court finds that Plaintiffs' counsel, Mr. Louis D. Stober, is qualified to conduct this class action in light of his large-scale representation of the PCOs and PCOSs in numerous other actions in this district. Thus, Plaintiffs have satisfied Rule 23's adequacy requirement.

      v.   **Ascertainability**

"The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 269. What the ascertainability requirement does not require is a showing of administrative feasibility at the

12

class certification stage. *Id.* at 265. Here, the proposed class is clearly ascertainable as it can be defined with objective criteria. That is, the class is to consist of all male and female PCOs and PCOSs employed by Defendant over a delineated period. Thus, Plaintiffs have satisfied the requirement of ascertainability.

* * *

In sum, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(a).

### B. Rule 23(b)

In addition to the requirements of Rule 23(a), Plaintiffs must also satisfy one of the three requirements set forth in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Plaintiffs here have moved for class certification under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court will address the "predominance" and "superiority" requirements of Rule 23(b)(3) in turn.

#### i. Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 441 (E.D.N.Y. 2021) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re PPDAI Grp. Sec. Litig.*, 2022 WL 198491 at *7 (quoting *Wang*, 338 F.R.D. at 441). Notably, the predominance requirement does not demand that a proponent of class certification demonstrate that each element of her claim is susceptible to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). "That is, [i]ndividual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The [R]ule requires only that those questions not predominate over the common questions affecting the class as a whole." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (internal quotation marks and citation

omitted). The "'satisfaction of the typicality requirement of Rule 23(a) . . . goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality.'" *Stinson v. City of N.Y.*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012) (quoting *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986)).

Here, Plaintiffs assert a pattern or practice of discrimination claim. To prevail, they are required to show that "(1) the alleged [sex] discrimination amounted to more than sporadic acts of discrimination, but rather the defendant's standard operating procedure or the regular rather than unusual practice, and (2) the discrimination was directed at a class of victims." *Hill*, 2019 WL 1900503 at *9 (internal quotation marks omitted) (quoting *United States v. City of N.Y.*, 717 F.3d 72, 83 (2d Cir. 2013)); *see Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 77–78 (2d Cir. 2016). The core of each proposed members' allegations—irrespective of sex—is that Defendant has created a system of employment policies to discriminate against the predominately female PCOs and PCOSs to the detriment of all PCOs and PCOSs. Specifically, these policies include forcing *all* members to work supplemental days, not be compensated for mileage on noncontiguous overtime and supplemental day travel, and be subjected to random drug testing. Because "the essence of a pattern-or-practice claim is that if a pattern or practice exists as to one employee, it exists as to all employees given that the claim requires that the employer's behavior be the 'standard operating procedure,' Plaintiffs' claims, in satisfaction of the predominance requirement, may be established through generalized proof. *Id.* Moreover, Plaintiffs' allegations that such policies are a result of Defendant's discriminatory intent are also subject to generalized proof given that the crux of Plaintiffs' case is that the predominantly male FCTs and FCTSs are not subject to the same policies as Plaintiffs. Because this claim concerns, by its nature, the group of PCOs and PCOSs, rather than individuals, generalized proof, such as statistical evidence, will apply to all class members. *Hill*, 2019 WL 1900503 at *10. As such, the Court concludes that Plaintiffs have satisfied the predominance requirement.

      ii.    **Superiority**

The superiority element requires that the class action be "superior to other methods" for resolving the dispute in question. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 32 (citing Fed. R. Civ. P. 23(b)(3)). In considering superiority, courts must examine,

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served, namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 479–80 (E.D.N.Y. 2001) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The Second Circuit has echoed the Supreme Court's guidance that "Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (citing *Amchem Prods., Inc.*, 521 U.S. at 617).

The Court concludes that the above superiority factors weigh in favor of certifying this case as a class action. The parties have not made the Court aware of any other pending actions that concern the Title VII controversy at issue here. A review of the past and current wage litigations between Plaintiffs and Defendant strongly suggests to the Court that the class members largely prefer moving forward as a class as opposed to individually. Moreover, because each proposed class member works in Nassau County and thus within the bounds of this district, concentrating the prosecution of their claims in this forum is inarguably desirable. The proximity of all class members, as well as the fact that they are all PCOs or PCOSs, dramatically mitigates the difficulties in managing this class action. Thus, Rule 23(b)(3)'s superiority requirement is satisfied.

\* \* \*

In short, Plaintiffs have satisfied the requirements of Rule 23(b)(3).

15

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs have met the requirements of Rule 23.

Thus, Plaintiffs' motion to certify this case as a class action is granted.

Dated:   Central Islip, New York
        February 3, 2022

**S O   O R D E R E D:**

/s/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge