UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIELLE DAVIDSON et. al

      Plaintiffs,

  -against-

COUNTY OF NASSAU,

      Defendant.
-------------------------------------------------------------X
RENEE ABBANANTO et. al

      Plaintiffs,

  -against-

COUNTY OF NASSAU,

      Defendant.
-------------------------------------------------------------X

         **MEMORANDUM
         DECISION AND ORDER**

         2:18-CV-1182-JMW

         2:19-CV-1102-JMW

**A P P E A R A N C E S:**

Louis D. Stober, Jr.**,** Esq.
**Law Offices of Louis D. Stober, Jr., LLC**
98 Front Street
Mineola, NY 11501
*Attorney for All Plaintiffs*

Deanna Darlene Panico, Esq.
Rhoda Yohai Andors, Esq.
**Bee Ready Fishbein Hatter & Donovan, LLP**
170 Old Country Road, Suite 200
Mineola, NY 11501
*Attorneys for Defendant, County of Nassau*

Susan M. Tokarski, Esq.
**Nassau County Attorney's Office**
One West Street
Mineola, NY 11501
*Attorney for Defendant and Third-Party Plaintiff, County of Nassau*

Aaron Edward Kaplan, Esq.
Leslie Catherine Perrin, Esq.
**CSEA Inc.**
143 Washington Avenue
Albany, NY 12210
*Attorneys for Third-Party Defendant, CSEA Local 1000 AFSCME AFL-CIO and CSEA Local 830*

**WICKS,** Magistrate Judge:

Plaintiffs —male and female Police Communications Operators ("PCOs") and Police Communications Operators Supervisors ("PCOSs") —allege that Defendant County of Nassau subjected them to a system of illegal employment practices.  This case is but one of a series of cases that involve allegations of Equal Pay Act ("EPA"), New York Labor Law ("NYLL"), and federal and state wage and hour violations, while others involve allegations of Fair Labor Standards Act ("FLSA") violations.[1]  After extensive negotiations between the parties, they have now chosen to resolve these two remaining actions.  Before the Court is Plaintiffs' motion for approval of proposed settlement agreements in both cases, namely *Davidson et al. v. Cty. of Nassau*, 18-cv-1182 at DE 140 and *Abbananto et al. v. Cty. of Nassau*, 19-cv-1102 at DE 87.

---

[1] In *Chodkowski, et al. v. Cnty. of Nassau*, 16-cv-5770 (JMW), 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021), this Court approved a three-million-dollar settlement for over 200 PCOs and their supervisors for claims of unpaid wages under the FLSA. After that action, a small group of PCOs who were hired after the *Chodkowski* collective action opt-in period came forward alleging the same claims.  *See Aamodt, et al. v. Cnty. of Nassau*, No. 22-cv-1520-JMW, 2023 U.S. Dist. LEXIS 44547 (E.D.N.Y. Mar. 16, 2023) (approving an FLSA settlement payment of $41,750 and $20,000 in attorney's fees and costs). And finally, *Allen*, 22-cv-1572, involves a recently approved a settlement payout of $1.2 million and $175,000 in attorney's fees and costs.  *Allen, et al. v. Cnty. of Nassau*, No. 22-cv-1572 (E.D.N.Y. June 20, 2023).

For the following reasons, Plaintiffs' motion is GRANTED, and the proposed settlement agreements in both are therefore approved.[2]

## BACKGROUND

### A. *Abbananto*

The following facts are drawn from the Complaint.  (19-cv-1102 at DE 1.)  In *Abbananto*, Plaintiffs allege that Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), New York Human Rights Law, N.Y. Exec. Law § 296 ("NYHRL") § 290 *et seq*., Nassau County Government Law § 1307, and 42 U.S.C. § 1983.  (*Id.* at ¶ 1.)

This action comes in the form of a class action suit, consisting of PCOs and PCOSs who were employed by Defendant at any time three years prior from the filing of the complaint brought before the Equal Employment Opportunity Commission ("EEOC") to the entry of judgment for the instant action.  (*Id.* at ¶¶ 12, 15.)

Plaintiffs allege that Defendant created a system whereby the predominantly male Fire Communication Technicians ("FCTs") and Fire Communications Technicians Supervisors ("FCTSs") are treated and paid more favorably than the predominantly female PCOs and PCOSs, despite having nearly identical job responsibilities.  Specifically, even though the police, fire operators and supervisor groups are comprised of males and females, because the majority of FCTs and FCTSs are male, Plaintiffs allege that Defendant's favorable treatment of FCTs and FCTSs constitutes sexual discrimination in violation of both Title VII and NYHRL. (*Id.* at 11–12.)

---

[2] The parties submitted identical motions in both the *Davidson* and *Abbananto* cases which the undersigned has consolidated into one Order.  (*See Davidson*, 18-cv-1182 at DE 140); (*Abbananto*, 19-cv-1102 at DE 87).

PCOs and PCOSs work a seven-week tour cycle in which they work three twelve-hour shifts, totaling thirty-six hours per week for the first six weeks. (*Id.* at 8.) On the seventh week, PCOs and PCOSs are required to work four twelve-hour shifts, totaling forty-eight (48) hours of work for the final week of the tour cycle. (*Id.*) These are known as "supplemental days." (*Id.*) Plaintiffs allege that Defendant fails to provide them straight time or overtime pay for any hours worked over forty hours, i.e., the eight additional hours over supplemental days. (*Id.*) Plaintiffs further allege that Defendant never compensates them for mileage when working noncontiguous overtime or when working during the seventh supplemental week, and that Defendant subjects Plaintiffs to random drug testing. (*Id.* at 9.)

Plaintiffs allege that, in contrast, Defendant does not subject FCTs and FCTSs to the above employment conditions. Specifically, Plaintiffs allege that FCTs and FCTSs are (1) not required to work a seventh week on their tour cycle; (2) compensated when they work holidays at an overtime premium rate of triple the hourly rate for 12 hours before the holiday tour and 12 hours after the same tour; (3) compensated for mileage when working noncontiguous overtime; (4) not subjected to random drug testing; and (5) afforded seven to eight more opportunities a year for overtime than their PCOs and PCOSs counterparts. (*Id.* at 9–10.)

## B. *Davidson*

The following facts are drawn from the Amended Complaint. (18-cv-1182 at DE 92.) *Davidson* consists of individuals employed by Defendant, and includes Plaintiffs that are class members in previous cases involving similar claims: *Ebbert v. Nassau Cnty.*, 05-cv-5445 (JFB)(AKT) and *Volpe v. Nassau Cnty.*, 19-cv-02236 (JMW).[3] (18-cv-1182 at DE 92 at ¶ 1.)

---

[3] In *Ebbert*, female PCOs and PCOSs sought an equalization of pay to that of the FCTs and FCTSs from the time of that suit dating back to November 18, 1999. (18-cv-1182 at DE 92 at ¶ 67.) After settling these claims, the County was mandated to maintain equality between the two job groups including providing male FCTs and FCTSs and female PCOs and PCOSs with equal pay. (*Id.* at ¶ 68.) However,

Plaintiffs bring claims against the Defendant pursuant to the EPA and NYLL asserting that female PCOs and PCOSs employed by the County received less pay than the male FCTs and FCTSs. (*Id.* at ¶ 2.)  This Complaint encompasses all PCOs and PCOSs employed at any time from six years prior to the filing of this action to the entry of judgment. (*Id.* at ¶ 21.)

Specifically, Plaintiffs brought suit on their own and on behalf of other similarly situated PCOs and PCOSs who are and were required to work a "supplemental" 12-hour workday without any compensation in addition to their regular work schedule. (*Id.* at ¶ 3.)  Their schedule consists of seven-week tour cycles; from weeks one to six, they work three 12-hour shifts but in the seventh week, they must work four 12-hour shifts, totaling 48 hours for that week instead of the normal 36 hours. (*Id.* at ¶ 34.)  Since they have been employed and since that schedule was implemented in 1994, Plaintiffs have "regularly and continuously worked 48-hour work weeks every seventh week," which has resulted in seven to eight additional workdays each year. (*Id.* at ¶ 36.)  They allege this is in stark contrast to the FCTs and FCTSs, who do not have to work on such a day yet receive the same pay as the PCOs and PCOSs and perform virtually the same duties. (*Id.* at ¶¶ 3, 41, 43, 47-48.)

In addition to the unequal pay for additional days worked, FCTs and FCTSs are also compensated for their mileage when they work overtime and are also compensated for lunch periods, while PCOs and PCOSs receive neither of these forms of pay. (*Id.* at ¶¶ 56-57.)  And when PCOs and PCOSs must exchange one of these supplemental working days for a training day, they must complete 12-hour workdays of training but never receive straight or overtime for such days. (*Id.* at ¶¶ 61-62.)  However, the predominantly male FCTs and FCTSs are not

---

because the effect of *Ebbert* resulted in male PCOs and PCOSs being paid less than the female PCOs and PCOS for performing the same work, male PCOs and PCOSs brought suit under the state and federal EPAs. (*Id.* at ¶ 69.)  This resulted in the *Volpe* lawsuit and a similar settlement in which and female PCOs and PCOSs were to receive equal pay under the state and federal EPA. (*Id.* at ¶¶ 70-71.)

required to complete this training using an exchange day and are thus compensated when completing this same training.  (*Id.* at ¶ 63.)

With respect to the collective action in this case, female PCOs and PCOSs bring suit under the EPA and include those similarly situated and employed by Defendant within three years prior to the commencement of the action.  (*Id.* at ¶ 16.)  And the male PCOs and PCOSs also bring suit under the Equal Pay Act and include similarly situated employees under Defendant's employment within three years of commencement of the action.  (*Id.* at ¶ 17.)   If female PCOS and PCOSs obtain any relief, such as substantial back pay and salaries that are more comparable with the male FCTs, then male PCOs and PCOSs will be able to join in the action under the Equal Pay Act.  (*Id.*)

Plaintiffs first filed suit on March 22, 2017, alleging that Defendant's acts violated the *Ebbert* and *Volpe* settlements which dealt with federal and state EPA claims, the FLSA, and the NYLL.  (*Id.* at ¶ 64.)

## **PROCEDURAL HISTORY**

### A.  *Abbananto*

On March 22, 2017, Plaintiffs filed a Notice of Claim on the County.  (19-cv-1102 at DE 1 at ¶ 43.)  They also filed claims with the EEOC and the New York State Division of Human Rights.  (*Id.* at ¶ 45.)  On November 27, 2018, after receiving a "right to sue" letter from the EEOC stating that Plaintiffs have 90 days to bring an action against Defendants, Plaintiffs brought suit in this Court on February 25, 2019, before the time elapsed.  (*Id.* at ¶ 48.)

Plaintiffs sued under Title VII, the NYHRL, the Nassau Government Law § 1307, and 42 U.S.C. § 1983 requesting, *inter alia*, that the Court (1) designate the action as a class action; (2) declaring Defendant's conduct to be in violation of all clams alleged; (3) entering a permanent

injunction preventing Defendant from further violating those acts; (4) equalizing employment conditions for female PCOs and PCOSs with the male FCTs and FCTSs; (5) awarding Plaintiffs and class members money for Defendant's conduct and other associated costs.  (*Id.* at 14-16.)

Judge Gary R. Brown heard the parties' arguments at a pre-motion conference for Defendant's anticipated motion to dismiss, which he denied.  (*Id.* at DE 30.)  Judge Brown then directed Defendant to answer Plaintiffs' complaint, which it did.

In its Answer, Defendant denied Plaintiffs' allegations and asserted, in relevant part, that Plaintiffs failed to state a cause of action upon which relief could be granted; statute of limitations; failure to exhaust all remedies; there were nondiscriminatory reasons for Defendant's conduct; did not allege a cognizable injury; were not owed overtime compensation; did not work 12 hours' worth of work during their 12-hour shifts; FCTs and FCTSs were mandated to work on Supplemental Days and did not have identical duties as the PCOSs and PCOs; and that some damages are barred as a result of the settlements reached in *Ebbert* and *Volpe*.  (*Id.* at DE 33 at 6-20.)

The case first resided with Magistrate Judge Arlene R. Lindsay and District Judge Joanna Seybert.  It was then reassigned to Judge Gary R. Brown and Magistrate Judge Anne Y. Shields. Finally, the case was reassigned to the undersigned, who held status conferences with the parties to discuss discovery and the imminent motion for class action certification which was filed on November 15, 2021.  (*Id.* at DE 58.)  Oral argument was heard on the motion on February 3, 2022, and the undersigned granted Plaintiffs' motion.  (*Id.* at DE 64.)  The class consisted of 336 individuals.  Parties then consented to the undersigned for all further proceedings.  (*Id.* at DE 89.)

**B.** *Davidson*

Because of the County's sustained refusal to eliminate the supplemental workdays for PCOs and PCOSs, Plaintiffs first brought suit under *Chodkowski et al. v. Cnty. of Nassau*, alleging breaches under *Ebbert* and *Volpe* and asserting claims under the FLSA, NYLL, and federal and state EPAs. (18-cv-1182 at DE 92 at ¶ 76.) They subsequently agreed to withdraw certain claims and re-file in state court, this time only asserting breach of the settlement orders and violations of the state and federal EPAs. (*Id.* at ¶ 79.) However, Justice James P. McCormack of the Nassau County Supreme Court dismissed Plaintiffs' motion to certify the class and granted leave to refile if Plaintiffs waive claims for liquidated damages since this was not allowed under CPLR § 901. (*Id.* at ¶ 81.) Because Plaintiffs would have to "surrender more than half of their potential recovery" to certify their class action in state court by getting rid of the damages, Plaintiffs filed a motion to amend the complaint in state court and renew their class certification motion, requesting their claims involving the settlement breaches be certified but that the EPA claims be set aside until the instant matter was resolved. (*Id.* at ¶¶ 82-83.)

On February 23, 2018, Plaintiffs brought suit under the federal EPA (*Id.* at ¶¶ 84-89) and the state EPA (*Id.* at ¶¶ 90-95) in this Court, requesting (1) designation as a collective and class action; (2) declaring Defendants violated the acts alleged; (3) permanent injunction preventing Defendants from engaging in further violations; (4) equalize salaries of female PCOs and PCOSs with male FCTs and FCTSs and subsequently equalizing the male PCOs and PCOSs with the female PCOs and PCOSs; and (5) awarding the associated damages to the injured Plaintiffs. (*Id.* at DE 1 at 21-23.) On June 6, 2019, Judge Gary R. Brown granted conditional collective certification to the FLSA Plaintiffs. (*See id.* at Electronic Order dated June 6, 2019.) And Judge

Brown had deemed the motion for class certification withdrawn without prejudice to renewal at a later date, but that motion was never re-filed.  (*See id*. at Electronic Order dated July 9, 2019.)

Defendant then filed a motion to dismiss (*Id*. at DE 88) which resulted in a dismissal of the state EPA claim with prejudice and the federal EPA claim without prejudice.  (*Id*. at DE 91.) Plaintiffs were then directed to file an amended complaint, which they did.  (*Id*. at DE 92.)

Defendants filed an answer denying the allegations and asserting, in relevant part, that Plaintiffs' rights were not violated; they failed to mitigate damages; Defendant enjoys at least some immunity and acted in accordance with their designated duties; failed to file a complaint under the county's EEO policy; failed to alleged facts to certify the action as a class action; failed to assert a cognizable injury; and that damages are otherwise not recoverable.  (*Id*. at DE 97 at 9-15.)

This case was originally before District Judge Arthur D. Spatt and later Judge Sandra J. Feuerstein.  The case was then reassigned to District Judge Gary R. Brown and Magistrate Judge Anne Y. Shields.  Finally, the case was reassigned to the undersigned and parties then consented to the undersigned for all proceedings.  (*See id*. at Electronic Order dated July 29, 2021.)

Throughout the course of both *Davidson and Abbananto*, parties engaged in years of discovery in which they filed various motions and periodic updates to the Court.  At a status conference on October 25, 2022 for both cases, parties expressed a desire to reach a resolution and appeared at the first of a series of settlement conferences on December 16, 2022.  Parties then engaged in a second settlement conference on March 8, 2023 and a third on March 20, 2023.

Following extensive settlement discussions, on March 20, 2022, the parties entered into a settlement agreement for both cases and moved for approval in accordance with *Cheeks v.*

*Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  (18-cv-1182 at DE 140); (19-cv-1102 at DE 87.)  However, because this case does not expressly involve claims under the FLSA and thus would not necessitate a review under *Cheeks*, the undersigned directed counsel to file a letter addressing the appropriate and applicable standard of review for the settlement of both cases.  (18-cv-1182 at Electronic Order dated June 23, 2023.)  After reviewing the parties' letter (*Id*. at DE 142) and for the reasons set forth below, the motion for settlement approval in both cases is granted.

## DISCUSSION

### A.  Class Action

#### i.    Legal Standard

This case involves (1) a class action and (2) a federal collective action.  Though the settlement class has already been certified (19-cv-1102 at DE 64), the undersigned must still assess whether approval of the settlement agreement should be granted.

Under Fed. R. Civ. P. 23(e), class action settlements are not effective until they receive court approval and are deemed "fair, adequate, and reasonable, and not [products] of collusion." *Mills v. Capital One, N.A.*, No. 14-cv-1937 (HBP), 2015 WL 5730008 at *3 (S.D.N.Y. Sept. 30, 2015) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). In doing so, the court analyzes whether the settlement exudes procedural and substantive fairness, and looks to the negotiation process through the *Grinnell* factors and the settlement terms themselves. *Id*.

When determining if the agreement was procedurally fair, courts examine whether parties engaged in "arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Id*. at *4 (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

In considering whether the settlement is substantively fair, courts look to the *Grinnell* factors, namely:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at *4.

The "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id.*

Against this backdrop, the Court reviews the proposed settlement agreement and motion.

### ii.   History of the Settlement[4]

The oldest cases in this series of actions date back to 2016, indicating a sequence of litigations with a long and complex history. Below are summaries of each case.

The parties in *Chodkowski* litigated the very same issues raised in the complaints here for nearly five years before settlement was approved. *See Chodkowski et al. v. Cnty. of Nassau*, No. 16-cv-5570, 2021 WL 3774187 at *1 (E.D.N.Y. Aug. 25, 2021). This case encompassed over 200 Plaintiff-PCOs and PCOSs employed by Defendant since October 2013 to the present, who opted-in as FLSA collective action members alleging that Defendant failed to pay them (1) the proper overtime rate as a result of working any hours beyond the normal 40 hours and (2) any compensation for hours worked over the normal 40 hours every seventh week when plaintiffs

---

[4] The parties have submitted identical electronic filings on the *Davidson* and *Abbananto* dockets. (18-cv-1182 at DE 140; 19-cv-1102 at DE 87.) The undersigned will cite to DE 140 when discussing the motion for settlement approval, which is to encompass DE 87 in 19-cv-1102 as well.

worked a fourth 12-hour shift.  *Id.* at *1-2.  Parties settled the case for $3 million, including $900,000 in attorney's fees.  *Id.* at *6.

*Aamodt* included 36 PCOs that were left out of the *Chodkowski* collective action, namely because these PCOs were hired after the *Chodkowski* opt-in period.  *Aamodt et al. v. Cnty. of Nassau*, No. 22-cv-1520-JMW, 2023 U.S. Dist. LEXIS 44547, at *2 (E.D.N.Y. Mar. 16, 2023).  These members asserted identical claims to those in *Chodkowski*.  *Id.*  The parties settled *Aamodt* for $41,750 including a $20,000 attorney's fee award.  *Id.* at *7.

*Allen* involved male FCTs and FCTSs asserting claims pursuant to the FLSA and EPA that Defendant failed to pay them the same rate as female PCOs or give them breaks during a 12-hour shift.  *Allen v. Cnty. of Nassau*, No. 22-cv-1572 (JMW), 2023 U.S. Dist. LEXIS 106580, at *1 (E.D.N.Y. June 20, 2023).  This case resulted in a $1.2 million settlement, including a $175,000 attorney's fee award.  *Id.* at *8.

### a.  The Instant Settlement Agreement

As discussed above, and what seems to be the reverse of what the *Allen* plaintiffs alleged, the cases before the Court involve a collective action and a class action consisting of PCOs and PCOSs who allege that they did not receive mileage reimbursements when working overtime, and FCTs and FCTSs who were allegedly uncompensated for holiday hours.  The members of each class or collective action includes those that opted in three years prior to the *Davidson* filing (2015) and three years prior to the *Abbananto* filing (2016).  (18-cv-1182 at DE 140 at 3.)

The proposed settlement agreement was fully executed on June 5, 2022, and filed with the Court for approval ("Settlement Agreement").  (18-cv-1182 at DE 139; 19-cv-1102 at DE 90.)  Thereunder, **the total settlement amount is $2,300,000** to be disbursed as follows:

- $15,333.33 to Q6 Advisors, the Settlement Fund Administrators, in compensation for their service to each of the Plaintiffs and class members;

- $25,000 to Matt Sarter as a participation fee for his assistance with the case;

- $13,571.43 each to the following Plaintiffs: Chodkowski, Davidson, Abbananto, Delahunty, Neal, Pedenzin, and Lauro; and

- $766,666.67 in attorney's fees and costs payable to Plaintiffs' counsel.

(18-cv-1182 at DE 140 at 2-3.)

For the reasons set forth below, the Court finds that the monetary and non-monetary terms of the settlement are both fair and reasonable.

### iii.    Approval of this Settlement Agreement

#### a.  Procedural Fairness

Having reviewed the submissions, and the undersigned's involvement in the settlement negotiation process—Plaintiffs' letter motion and supplemental filings, declaration of Plaintiffs' counsel, and the proposed Settlement Agreement—the Court finds that the settlement is procedurally fair pursuant to Rule 23(e).

Here, the parties have properly engaged in bargaining at arm's-length to reach the Settlement Agreement.  All parties are represented by counsel.  Furthermore, it is safe to say that counsel for both sides are not only well-versed in this area of law, but also that they have a unique command of these very facts; as Plaintiffs' counsel puts it, they are "seasoned veterans of these FLSA/EPA wars."  (DE 140 at 7.)

In addition, the parties and counsel negotiated in good faith and agreed upon the terms within the Settlement Agreement.  (*Id.*)  The record bears no signs that this settlement is a product of fraud, coercion, or collusion.  In fact, it shows quite the opposite—the undersigned

facilitated three settlement conferences with the parties on three separate occasions: (1) December 16, 2022, (2) March 8, 2023, and (3) March 20, 2023.  (DE 140 at 2.)  Each of these conferences entailed hours long conversations with each side to come to the compromise presently being decided before the Court.  Thus, the settlement is procedurally fair.

### b. Substantive Fairness

In applying the *Grinnell* factors, this Court finds that they weigh in favor of final approval.

### 1. Factors 1, 4, 5, and 6: The Costs, Risks, and Delay of Trial and Appeal

The first *Grinnell* factor supports final approval because litigation through trial —given the complex overtime issues and vast number of Plaintiffs—would have dramatically increased the costs to date.  This litigation is already of considerable length, and a trial would likely be protracted and laborious, as well. Thus, settlement averts what could amount to considerable additional expenses and burdens in preparing their defenses and claims and pursuing further discovery and motion practice.  Indeed, "[c]lass action suits have a well-deserved reputation as being most complex."  *Rosenfeld v. Lenich*, No. 18-cv- 6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. Feb. 4, 2021).

Similarly, the fourth, fifth, and sixth *Grinnell* factors—which evaluate the risks of litigation—also support approval of the settlement agreement.  Plaintiffs have come to a fair compromise because mileage reimbursement is their only element of damages at this juncture, as it was determined through discovery that the PCOs and PCOSs did not receive a less shift differential than FCT Is and IIs.  (DE 140 at 5.)  Still, although their sole source of recovery, Plaintiffs could have walked away with a windfall had the case gone to trial.  The parties note that if Plaintiffs were to succeed at trial, the amounts for mileage reimbursement would be

14

upwards of $ 2,000,000, and the overall total for damages could be more than $12 million if Plaintiffs are successful on other claims including shift differential, holiday pay, and pain and suffering, so the total settlement payment of $2,300,000 is considered fair and reasonable.  (*Id.* at 6 and 7.)  Thus, the allocation of the settlement for mileage reimbursement is 11.65% of potential recovery, and total settlement amount is roughly 19.17% of the total potential damages. However, if the County successfully argued that the FCTs and PCOs were not comparable and thus not covered by the EPA or Title VII/NYSHRL, Plaintiffs and class members would have seen no recovery.  (*Id*. at 7.)  As such, this Settlement Agreement reflects a compromise between Plaintiffs and the County wherein both parties may avoid the inherent risks of litigation.

### 2. Factor 2: The Reaction of the Class to the Settlement

Courts in this Circuit have found that the reaction of the class factor is the most significant factor in considering adequacy.  *See Etienne v. Reliant Capital Sols., LLC*, No. 16-cv-2359 (WFK) (JO), 2019 U.S. Dist. LEXIS 77329, at *8 (E.D.N.Y. May 7, 2019); *In re Visa Check/Mastermoney Antitrust Litig*., 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (same).

Counsel has advised that the required notices have been sent to both class and collective members in both cases.  Out of all the mailings, Plaintiffs only received one inquiry, and the parties agreed to include that individual in the class.  (DE 91 at 1.)  No class member opted out. (*Id*.); *see In re GSE Bonds Antitrust Litig*., No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 104842, at *13 (S.D.N.Y. June 16, 2020) (stating that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Diamond v. Fogelman*, No. 90-cv-0900, 1992 U.S. Dist. LEXIS 9734, at *9 (E.D.N.Y. June 24, 1992) (finding that this factor weighs in favor of approval since no objections were received and 58 requests for exclusion were received constituting about 1.97% of the total units involved).

In addition, nineteen (19) people did not provide opt-ins to the *Davidson* collective action.  (*Id.*)  Counsel, however, has submitted a letter to the Court stating that these individuals do not affect the motion for settlement approval because they would not be entitled to damages since they did not work holidays or overtime while working with the County.  (*Id.*)  Thus, there are 235 people total entitled to share in the settlement fund.  (DE 140 at 4.)

This factor weighs in favor of settlement approval.

### 3. Factor 3: The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor also weighs in favor of final approval, as the record is fully developed and the parties engaged in years of meaningful discovery and motion practice.  (DE 140 at 8.)  Furthermore, as stated above, the parties negotiated independently and at arm's-length.  As such, they are well-equipped to weigh the strengths and weakness of this case.

### 4. Factor 7: The Ability of Defendants to Withstand a Greater Judgment

If a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate.  *Flores v. CGI Inc.*, No. 22-cv-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022).

Here as for the seventh *Grinnell* factor, the parties have not shown that the County can or cannot withstand a greater judgment.  Therefore, the Court finds this factor to be neutral.  Furthermore, it is important to note that settlement agreements have been found fair even where this factor weighs against a grant of approval.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47.

Thus, this factor is neutral.

### 5. Factors 8 and 9: Reasonableness of the Settlement

The Court combines factors 8 and 9 for the purposes of the settlement approval analysis. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47–48. Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry v. Little Mint, Inc.,* No. 12-cv-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (quotes omitted). Rather, the Court considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Id.* For instance, a settlement which allows class members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

Here, the eighth and ninth *Grinnell* factors weigh in favor of approval. The Settlement Agreement provides for a total payment of $2,300,000, of which $1,398,000.01 will be distributed amongst Plaintiffs and class members for lost mileage reimbursement. Individual class members will recover based on a formula that "takes into account [their] current or former status as a full-time or part-time employee and the proportionate amount of mileage reimbursement [they] had during the time period covered by the lawsuit." (DE 140-1 at 53.) In addition, the parties have discussed and included a provision which safeguards against members receiving duplicative settlement monies. (*Id.* at 55.) Had the Plaintiffs prevailed on all claims, they may have received a total award totaling over $12 million, and could have received upwards of $2,000,000 for the mileage reimbursement claims alone—as such, a total settlement payment of $2,300,000 appears reasonable. (DE 140 at 6-7.) Furthermore, as previously discussed, litigation is inherently fraught with risk, and this Settlement Agreement allows the parties to circumvent that uncertainty.

Considering the *Grinnell* factors, the Court finds the class action settlement to be both substantively and procedurally fair.

**B. Collective Action**

**i.    Legal Standard**

For purposes of this analysis, the EPA is considered a "part of" the FLSA." *Kassman v. KPMG* LLP, No. 11-cv-3743 (LGS), 2021 WL 1393296 (S.D.N.Y. Apr. 12, 2021); *see also* Equal Pay Act, 29 U.S.C. § 206(d) (stating that the EPA embodies the FLSA and is applicable to all employers under the FLSA).

"While FLSA does not prescribe any procedures for approval of actions brought collectively by those who are 'similarly situated,' courts have long construed § 216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit." *D'Angelo v. Hunter Bus. Sch., Inc*., No. 21-cv-03334 (GRB) (JMW), 2023 U.S. Dist. LEXIS 12344, at *20 (E.D.N.Y. Jan. 24, 2023).  Approval of a collective action is a two-step process.  *Id.*  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.* (citing *Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010)). All that is needed is a modest factual showing that plaintiffs and potential opt-in plaintiffs were victims of a common policy that violated the law.  *Id.*

The second step occurs later, on a more complete record.  *Id.*  Plaintiffs must show that the plaintiffs who opted in are actually similarly situated to the named plaintiffs.  *Id.*

Even under the "fairly lenient standard" at the conditional certification stage, the Court conditionally certified collective action members in *Davidson* under the FLSA, 29 U.S.C. § 216(b) on behalf of named Plaintiffs and others similarly situated to other PCOs and PCOSs who

were victims of Defendant's policies or plans to avoid paying them equally to FCTs and FCTSs. (DE 140-1 at 4-5.); (DE 34-1.)

Although Plaintiffs do not request final collective action certification here, the undersigned undertakes such an analysis.  The Court is satisfied that Plaintiffs have met their burden in demonstrating that the 235 individuals who opted in to *Davidson* are similarly situated to Plaintiffs.   Plaintiffs have demonstrated that they were all uncompensated in the same manner as the FCTs and FCTSs for the same hours worked.  (DE 34-1 at 8.)  And notably, Plaintiffs have advised that those who did not opt-in would not partake in the damages because they neither worked holidays nor overtime.  (DE 91.)  Thus, the undersigned certifies the collective action.

A settlement in an FLSA collective action cannot take effect unless it is approved by either a district court or the United States Department of Labor.  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  However, settlement of a collective action does not implicate due process concerns because FLSA plaintiffs may file suit against their employer even if they fail to opt-in—thus, the standard is considerably less stringent.  *Mills v. Capital One*, No. 14-cv-1937 (HBP), 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015).

Since this case involves both a class action and collective action, this Court finds the court's approach in *Mills v. Capital One, N.A.* instructive.  *Id.  Mills* involved a class and collection active in which plaintiffs pursued claims, *inter alia*, pursuant to the FLSA and NYLL to recover unpaid overtime and attorney's fees and costs.  *Id*. at *6.  In its analysis, the court looked to the negotiation process of the settlement and the factors under *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974) for approving the class action. *Id*. at *4.  The court then briefly looked to *Cheeks v. Freeport Pancake House* for the collective action analysis and analyzed whether the settlement reflected a fair and reasonable compromise, specifically, whether the settlement occurred as a

result of arm's-length negotiations. *Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d, 332, 335 (S.D.N.Y. 2012)); *see also Ramos v. Nikodemo Operating Corp.*, No. 16-cv-1052 (KAM) (JO), 2017 WL 11508016, at *5 (E.D.N.Y. Aug. 7, 2017) (finding that because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement").

The undersigned considers approval of the collective action through this lens.

### ii.    Approval of Collective Action Settlement

The proposed Settlement Agreement does not contain any of the problematic provisions that are flagged in *Cheeks*.  First, it contains no confidentiality provision.  Second, while the Settlement Agreement contains a release, it is not overbroad.  The release merely precludes future lawsuits and duplicative damages arising out of Plaintiffs' overtime claims asserted here which, under the Settlement Agreement, they will be compensated for.  (DE 140-1 at 9.)  Thus, nothing in the record indicates that there was any collusion; as such, the Court finds that the Settlement Agreement meets the *Cheeks* standard.

### C.  Attorney's Fee Award

Counsel requests $766,666.67 out of the $ 2,300,000 settlement for an attorney's fee award, which is exactly one-third of the settlement amount and is to inclusive of both fees and costs.  (DE 140-6 at 2.)

"In an FLSA case, the Court must independently ascertain the reasonableness of the fee request."  *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229–30 (S.D.N.Y. 2016) (citation omitted).  When considering the reasonableness of applications for attorney's fees, Courts employ the lodestar method.  *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21 CV 3284 (ENV) (LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022).  The lodestar calculation,

which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Courts may also employ the "percentage of the fund" method which permits attorneys to recover a percentage of the settlement amount via a previously determined contingency fee. *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010).  "With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable." *Lai v. Journey Preparatroy Sch., Inc.*, No. 19-cv-2970 (CLP), 2022 WL 3327824, at *3 (E.D.N.Y. May 26, 2022)); *Kazadavenko*, 2022 WL 2467541 at *4 (collecting cases).  However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar "cross-check" and "compare the fees generated by the percentage method with those generated by the lodestar method." *Mobley v. Five Gems Mgmt. Corp.*, No. 17-cv-9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018) (citations omitted).

"[I]t is very common to seek 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; *see also Azogue v. 16 for 8 Hosp. LLC*, No. 13-cv-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693 (PGG), 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

Critically, "[t]he fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Wolinsky*, 900 F. Supp. 2d at 336 ("In the Second Circuit, that entails submitting

21

contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.").

Here, counsel's proposed request for attorney's fees totaling one-third of the Settlement Agreement is well within the range of reasonableness.  Plaintiffs' counsel has submitted contemporaneous billing records.  Upon review of the billing records, Plaintiffs' counsel has incurred $1,827,542.50[5] in attorney's fees as of March 20, 2023.  (DE 140-7.)  Thus, the amount sought in fees represents only 41.95% of the fees actually incurred by Plaintiffs' counsel in prosecuting these cases.

Whether the court chooses the lodestar method or the percentage method, courts typically consider the *Goldberger* factors as well.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Accordingly, the undersigned considers the factors below and conducts a Lodestar analysis, which both favor approval of the claimed fees.

Under *Goldberger*, the court considers six factors: (1) time and labor expended by counsel; (2) magnitude and complexities of the litigation; (3) litigation risks; (4) quality of representation; (5) requested fee in relation to the settlement; and (6) public policy considerations.  *Goldberger*, 209 F.3d at 50.

Here, Plaintiffs' counsel's billing records demonstrate that he has spent 2,468.65 hours at $650 per hour for over five years of working on the matter from commencement through finalization of the settlement.[6]  (DE 140-7.)   This amount is reasonable because it includes the

---

[5] The undersigned notes that there are several issues that surface in counsel's contemporaneous billing records.  For example, an attorney with the initials 'JPM' has a billing rate of $350, but there was one entry in which the hourly billing rate was $3,503. (DE 140-7 at 12.)  Similarly, an attorney with initials 'KFM' who charges $350 an hour, was billed at $3,500 on one occasion.  (DE 140-7 at 17.)  The Court considers these inadvertent billing errors and has made the appropriate adjustment.

[6] Note that the total number of hours the Louis D. Stober notes in his declaration of 3,269.25 hours includes work performed by paralegals at $250 per hour and other personnel at $350 per hour as well as

fee for administering the settlement in the future.  Further, Plaintiffs' counsel incurred costs of

$4,101.89, such as mileage fees, filing fees and mailing court documents, which the Court finds

were incidental and necessary to represent Plaintiffs and reach a settlement in this matter.  *See In

re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)

("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and

customarily charged to their clients, as long as they were incidental and necessary to the

representation of those clients.") (internal quotation marks omitted).

As a proposed fair compromise to bring this matter to a speedy resolution, Plaintiffs'

counsel has agreed to reduce his office's costs and fees from $1,831,644.39 [7] to $ 766,666.67.

(DE 140-6 at 4.)  By doing so, Plaintiffs' counsel effectively reduced his billing rate to $310.56

per hour for his work, a significant discount from his usual rate of $650 per hour.  (*Id.*)  This is

especially generous considering Mr. Stober's 39 years of experience in litigating FLSA cases and

his particularized knowledge and experience of the issues in this case.  The $310.56 hourly rate

applied here is well within the range of what is ordinarily accepted as reasonable for law firm

partners in this district and is therefore fair and reasonable.  *See, e.g.*, *Li v. Chang Lung Grp.*

*Inc.*, No. 16-cv-6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300

to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District

of New York); *Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-cv-2520 (FB) (ST), 2018 WL

4782342, at *9 (E.D.N.Y. Sept. 17, 2018), *report and recommendation adopted as modified* by

---

travel time for court appearances and other fees.  (DE 140-6; DE 140-7.)  The total number of hours
worked on this matter by all personnel is 3,204.25.

[7] Mr. Stober claims that the total amount of fees and expenses is $1,856.818.27.  (DE 140-6 at 2.)
However, the undersigned has performed its own calculation and corrects the discrepancies noted in note
5.

2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (noting that the reasonable hourly rates for wage and hour cases in the district has been set at $300 to $400).

Second, the Court finds the overall number of hours exerted on this matter to be reasonable in light of the complex issues presented by this case and its unique relation to the *Chodkowski* and other related matters. *See Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law…These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."). This factor weighs in favor of granting Plaintiffs' counsel's motion for fees and costs.

Finally, as for public policy considerations, such an award will encourage experienced litigators, like those involved here, to take on such cases in the face of risk. Thus, these attorneys should be compensated adequately for the work performed. *Willix v. Healthfirst, Inc.,* No. 07-cv-1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011).

All of these factors weigh in favor of approval of the attorney's fee award requested.

### i. Lodestar Calculation

A cross-check of fees applying the lodestar analysis is also warranted. In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

Having reviewed the statements and billing records of Plaintiffs' counsel, the Court also finds the proposed attorney's fees fair and reasonable after performing a lodestar cross-check. Multiplying Stober's reduced rate of $310.56 per hour by 3,204.25, the total number of hours worked, yields a lodestar of $995,111.88, which is more than one-third of the $2,300,000 settlement and is over $200,000 more than what Plaintiffs' counsel requests. Further, the

attorney's fees and costs amount requested by Stober is unopposed by Defendant's counsel, which weighs in favor of approval of the requested amount.

Accordingly, the lodestar cross-check affirms that the requested attorney's fee of $766,666.67, which is exactly one-third of the settlement amount, is fair and reasonable in this case.

## **CONCLUSION**

For the foregoing reasons, the parties' motion for approval of the Settlement Agreement is **GRANTED**.  Accordingly, Plaintiffs' claims are DISMISSED WITH PREJUDICE.  The settlement agreement must be submitted to the legislature for approval within 10 days of the Court's approval under *Cheeks*.  (DE 140-1 at 10.)  The parties shall file a Stipulation of Dismissal with Prejudice in both cases once 30 days have elapsed from the final settlement payment from Defendant and the Court will direct the Clerk's Office to close these cases thereafter.

Dated: Central Islip, New York
　　　 August 14, 2023

S O   O R D E R E D:

/s/ *James M. Wicks*

　　 JAMES M. WICKS
United States Magistrate Judge